LANCASTER et al. v. MAYS. (No. 2041.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 19, 1918. Rehearing Denied Jan. 2, 1919.)

1. APPEAL AND ERROR ⊕⇒1026 — REVIEW — HARMLESS ERROR.

To authorize the appellate court to reverse a judgment for error, it must appear that the error was reasonably calculated to, and probably did, injure the appellant.

2. APPEAL AND ERROR ⊕⇒1062(1)—REVIEW— HARMLESS ERROR.

In an action by a railroad fireman for injuries, held, that instructions, though erroneous in submitting to the jury facts conclusively established, etc., were harmless.

3. TRIAL ⊕⇒331—VERDICT—INDEFINITENESS.

Where under the charge the only theory on which verdict could be rendered against defendant for injuries to railroad fireman was negligent lookout, a verdict for plaintiff could not be indefinite in that it could not be known whether jury found on some other acts of negligence.

4. APPEAL AND ERROR ⊕⇒930(2) — PRESUMPTION—INSTRUCTIONS REGARDED.

It must be assumed that the jury regarded the instructions given.

5. TRIAL ⊕⇒260(8)—INSTRUCTIONS—REFUSAL.

Where under the instructions the jury could find for plaintiff, a railroad fireman, injured in a collision, only if the engineer was negligent in failing to discover the open switch, etc., held,

that the refusal of further instructions that the engineer was not negligent in doing no more than he did to stop the train after discovering the open switch, that negligence could not be based on the fact the switch was open, etc., was proper.

6. MASTER AND SERVANT ⬤══286(34) — INJURIES TO FIREMAN—QUESTION FOR JURY.

In an action for injuries to railroad fireman in collision based on negligence of engineer in running into open switch, where the evidence showed that green light and green target meant clear main track and red light and red target meant open switch, it was a question for jury whether engineer was negligent in passing a green light and red target.

7. MASTER AND SERVANT ⬤══139—INJURIES TO SERVANT—PROXIMATE CAUSE.

In an action by a railroad fireman injured in a collision when the engine on which he was working passed through an open switch, and the sole basis for liability was the negligence of the engineer in not discovering that the switch was open, it is immaterial that switch was changed by an unauthorized person.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by H. R. Mays against J. L. Lancaster and Pearl Wright, receivers. From a judgment for plaintiff, defendants appeal. Affirmed.

Appellee was the fireman on an engine of a passenger train which belonged to the Texas & Pacific Railway Company and which was operated between Marshall, Tex., and New Orleans, La., by appellants as the receivers of said company.

On a night in February, 1918, the train was moving on the main line track near Boyce, La., at a speed of from 30 to 40 miles an hour, when, because of an open switch, it ran on to a side track and collided with cars standing thereon. The engine was within 75 or 100 feet of the switch before appellee discovered that it was open. He at once hallooed to the engineer advising him of the fact, and prepared to jump from the engine. He (appellee) fell or was thrown from the engine about the time it collided with the cars on the side track, and was thereby seriously and permanently injured. He testified:

"What knocked me off, I suppose, is when the engine goes on a curve on the spur track, at first it turns to the left and then turns to the right. I think I fell off before the engine struck the cars on the side track, but am not sure."

On the theory that the injury he suffered was due to negligence on the part of appellants which rendered them liable to him, appellee sued and recovered the judgment for $7,500, from which the appeal is prosecuted.

In their answer appellants denied that the accident was due to negligence on their part, but alleged that—

"Same was caused by some other person, not in the employ of this defendant, but acting maliciously, turned, broke, and changed the switch, which caused the engine to go on the wrong track and cause the accident and injury."

There was testimony to support findings as follows: (1) That the switch was thrown for the side track; (2) that it was the duty of the engineer as he approached the switch to use care to discover if it was so thrown; (3) that in the exercise of proper care he should have discovered that it was so thrown when his engine was as far as from 175 to 200 yards from it, whereas he did not discover that the switch was so thrown until his engine was within 75 to 100 feet thereof; (4) that he could have stopped the train in a distance of 100 yards.

In his charge, after defining "negligence," "ordinary care," and "proximate cause," and telling the jury that it was the duty of both the engineer and appellee to keep a lookout to see that the track was safe for the train, and that it was the duty of the engineer "to exercise ordinary care in the operation of the train to discover any dangers ahead, and to exercise ordinary care to avoid injuring the plaintiff," the court further instructed the jury as follows:

"(6) Bearing in mind the foregoing definitions and explanation, if the jury shall believe from a preponderance of the evidence that the engineer in charge of the train was guilty of negligence in that he failed to exercise ordinary care in keeping a lookout for the condition of the track over which he was running, and that he negligently failed to discover that the switch was turned so as to allow the train to run upon the side track and its cars thereon, in time to have stopped the train and to have avoided the injury, and that as a proximate result of such negligence, if any, the plaintiff was injured, or if the jury should believe from the evidence that the circumstances of the situation made it appear that it was necessary for the plaintiff to jump from the engine in order to extricate himself from the danger, if any, and in jumping from said engine he received said injuries by reason of the negligence of the engineer in the respects herein referred to, then in either event you will find in favor of the plaintiff, unless you find for the defendants under other portions of this charge. But if you fail to find that the engineer was guilty of negligence in the respects above submitted to you, then you shall find for the defendants.

"(7) If some unauthorized person or persons not in the employ of defendants turned or changed the switch in question, the defendants would not be responsible for that act, and the mere fact that by reason of such facts, if any, the switch was in a position to allow the train to go in upon the spur track would not be negligence on the part of the defendants, and you cannot find a verdict for the plaintiff unless you further find that the engineer failed to exercise ordinary care in discovering the condition of the switch. So if the jury shall believe that the engineer operating the train exercised the care

of an ordinarily prudent person to discover whether the switch was set for the main line or spur track, he did everything in his power consistent with the safety of the passengers and the train to stop the train and to avoid the injury to plaintiff, then in that event the engineer would not be negligent, and it would be your duty to return a verdict for the defendants."

F. H. Prendergast, of Marshall, for appellants.

S. P. Jones, of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] The sixth and seventh paragraphs (set out in the statement above) of the court's charge to the jury are attacked as erroneous. It is insisted that it conclusively appeared from the testimony: (1) That the engineer discovered that the switch had been thrown for the side track before his engine reached same; and (2) that appellee was thrown or jumped from the engine before it collided with the cars on the side track. It is urged that the trial court therefore erred when, in said sixth paragraph, he submitted those matters to the jury as issues in the case. It is asserted that the court should, instead, have told the jury the engineer did discover before his engine reached it that the switch had been thrown, and that appellee was thrown or jumped from the engine before it collided with the cars.

If it should be conceded that the trial court erred as charged, it would not follow that the judgment should be reversed. To authorize this court to reverse the judgment it must not only appear that the trial court committed error, but it must also appear that the error was reasonably calculated to, and probably did, injure appellants. Appellants have not undertaken to point out, and we do not see, how, if the action of the court was erroneous as charged, their rights could have been thereby prejudiced. Therefore we think it unnecessary to stop and determine whether the court erred as asserted or not.

What has been said applies as well to the objection, and the contention based thereon, made to the seventh paragraph of the charge, to wit, that it conclusively appeared from the evidence that some unauthorized person changed the switch, and that it was therefore error for the court, instead of telling the jury it so appeared, to submit for their consideration a question as to whether the switch was changed by an unauthorized person or not. It not only is not made to appear that the error, if any, of the court in so charging the jury was prejudicial to appellants' rights, but it is plain, when the theory upon which the jury was authorized to find in appellee's favor is kept in mind, that no right of the appellants could have been prejudiced by the instruction given.

The fourth, fifth, sixth, and seventh assignments are predicated upon the action of the court in refusing certain special charges requested by appellants. Had the charges been given, the jury would have been instructed by one of them that they could not find "that the engineer was negligent in what he did after he saw that the switch was set for the spur track," because it appeared from the testimony that thereafterwards he "did everything in his power to stop the train as quickly as he could"; by another, that appellants were not responsible for the switch being thrown as it was, because it appeared that it was so thrown by some unauthorized person; by another, that in determining whether it was due to negligence on the part of appellants that the switch was open on the occasion in question or not, they should not consider evidence showing that it was open on other occasions; and by the other, that if the switch light showed green to the engineer as he approached the side track he "had the right to rely on that fact as showing the switch set for the main line, and would not be negligent in doing so, unless and until he received information that the switch was set for the spur track."

In their eighth, ninth, and tenth assignments appellants assert that the verdict was contrary to the evidence in that it appeared: (1) That "some unauthorized and malicious person had purposely changed the switch so that the train would go in on the side track, and changed the light so as to mislead the engineer and cause him to think the main line was safe for him to pass on"; (2) that the engineer "kept close lookout ahead of him, and, having seen the green light, supposed that the main line was clear until he got too near the switch to stop his train"; (3) that the engineer "after he saw the switch was set for the spur track did everything in his power to stop the train or lessen its speed before plaintiff was injured."

[3] In their eleventh assignment appellants attack the verdict as "indefinite, in that, when read in the light of the charge of the court, it cannot be known whether the jury intended to find that the defendant was negligent in having the switch, at the time of the accident, thrown for the spur track, or whether they based their finding on the fact that the engineer was negligent in not observing the fact that the switch was thrown for the spur track sooner than he did, or whether they based their finding on the fact that the engineer failed to do everything in his power to stop the cars after he discovered that the switch was turned for the spur track."

Practically all of the objections to the judgment presented by the assignments above specified are predicated upon a view of the case as tried which we think is not warranted by the record. The theory, and only

theory, on which the jury were authorized by the charge to find in favor of appellee was that the engineer was guilty of negligence in that he failed to exercise ordinary care "in keeping a lookout for the condition of the track," and, as a consequence, failed to discover that the switch was thrown as it was in time to have stopped the train before it ran onto the side track.

It is plain, therefore, that the verdict was not "indefinite," as is asserted, for the jury were not authorized by the charge to find in favor of appellee upon the ground that appellants were guilty of negligence in having the switch thrown as it was, nor upon the ground that the engineer failed to do everything in his power, after he discovered that the switch was thrown, to stop his train before it ran onto the side track.

[4, 5] And it is just as plain, we think, the court having instructed the jury as stated, that appellants are not entitled to have the judgment reversed because the court refused to further instruct them (1) not to find the engineer to have been guilty of negligence for not doing more than he did to stop the train after he discovered that the switch was open for the side track; (2) not to find appellants guilty of negligence because it appeared that the switch was too open; and (3) not to consider evidence showing that the switch was so open on other occasions than the one in question. If the jury regarded the instructions given them, and it must be assumed that they did, they could not have based their verdict upon the matters forming the subjects of the refused charges specified.   •

[6] As to the special charge which would have told the jury, had it been given, that the engineer had a right to assume that the switch was set for the main line if the switch light showed to be green as he approached it, it clearly would have been error to have given it. There was testimony that the switch stand was constructed to show a red light and a red target when the switch was set for the side track, and a green light and a green target when it was set for the main line track. There was testimony that the switch stand had been so changed as to show a green light and a red target on the occasion in question. And there was testimony that the engineer, when 175 to 200 yards from the stand, by the exercise of ordinary care, could have seen that the target showed red. If he could and did not see it, or if he did see it, but ignored the warning it carried, certainly it was for the jury to say whether he was therefore guilty of negligence or not.

[7] It is obvious, in view of the instructions to the jury, that the assignments attacking the verdict as contrary to evidence showing that the switch was changed by an unauthorized person, and that the engineer did everything in his power to stop the train after he discovered that the switch was thrown for the side track, should be overruled. That the switch was so changed and that the engineer so acted were not reasons why the jury should not have found the engineer guilty of negligence in failing, until his engine was within 100 feet of the switch, to discover that it was set for the side track, when by the exercise of care he should have discovered that the switch was set when his engine was as far as 175 to 200 yards from it.

All the assignments, including the twelfth, which presents the contention on the part of appellants that the verdict is excessive, are overruled, and the judgment is affirmed.